**LAW OFFICES OF RONALD A. MARRON**
RONALD A. MARRON (SBN 175650)
*ron@consumersadvocates.com*
ALEXIS M. WOOD (SBN 270200)
*alexis@consumersadvocates.com*
KAS L. GALLUCCI (SBN 288709)
*kas@consumersadvocates.com*
651 Arroyo Drive
San Diego, California 92103
Telephone: (619) 696-9006
Facsimile: (619) 564-6665

***Attorneys for Plaintiffs and the Proposed Class***

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MELINDA FERGUSON and MARIE WEST, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>AGE OF LEARNING, INC., a Delaware corporation, also d/b/a ABCmouse and ABCmouse.com<br>Defendant. | Case No.:<br><br>**CLASS ACTION COMPLAINT**<br><br><br>**DEMAND FOR JURY TRIAL** |

Plaintiffs Melinda Ferguson and Marie West, on behalf of themselves and all others similarly situated ("Plaintiffs"), by and through their undersigned counsel, hereby sue Age of Learning, Inc. d/b/a ABCmouse and/or ABCmouse.com ("Defendant" or "ABCmouse") and, upon information and belief and investigation of counsel, alleges as follows:

## I.    INTRODUCTION

1.    ABCmouse operates a membership-based online learning tool called ABCmouse Early Learning Academy for children ages 2 to 8 years old.  Consumers can access ABCmouse at Defendant's website, abcmouse.com, and through Defendant's mobile application ("app").  Defendant provides consumers access to ABCmouse through memberships which typically cost $9.95 for a monthly membership or $59.95 to $79.95 for a twelve-month membership.

2.    Plaintiffs and class members are consumers in California who subscribed to Defendant's subscription-based services and were illegally charged fees for that service.

3.    Specifically, from as early as 2012 to at least September of 2020, Defendant failed to adequately disclose key terms of the subscription services and instead enrolled consumers in yearly plans that renewed indefinitely without the consumers knowledge or consent.  Defendant's advertising for its service failed to disclose that memberships automatically renew, Defendant would charge members each year unless the consumer canceled, and misled consumers into automatic renewals by claiming a thirty-day free trial.  Defendant also made it exceptionally difficult and confusing for consumers to cancel their memberships despite claiming an "Easy Cancelation" policy.  These practices and polices violate California's Automatic Renewal Law, Cal. Bus. Prof. Code §§ 17600-17606, *et. seq*.

4.    Furthermore, Defendant's conduct violates California's Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq*. ("CLRA"), California's Unfair Competition Law ("UCL"), Business & Professional Code, §§ 17200, *et seq.,* Cal.

CLASS ACTION COMPLAINT

Civ. Code §§ 1709-1710, Cal. Bus. & Prof. Code §§ 17600 *et seq*. and 17535, and Cal. Penal Code § 496.

5.     As a direct result of Defendant's conduct, Plaintiffs and members of the proposed class suffered economic injury in the loss of monies paid for Defendant's subscriptions, as well as loss of their rescission rights.

6.     Plaintiffs, on behalf of themselves and members of the class they seek to represent, seek restitution, declaratory, injunctive, and other equitable relief, statutory damages, actual and treble damages, reasonable attorneys' fees and costs, and interest, as set forth below.

## II.     JURISDICTION AND VENUE

7.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d), because at least one member of the class, as defined below is a citizen of a different state than Defendant, there are more than 100 members of the class, and the aggregate amount in controversy exceeds $5,000,000 exclusive of interest and costs.

8.     The Court has personal jurisdiction over Defendant because Defendant is a Delaware corporation with its principal place of business at 101 North Brand Boulevard, 8th Floor, Glendale, California and regularly conducts business in California.

9.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because the injury in this case substantially occurred in this District and Defendant's principal place of business is in this District.

## III.     PARTIES

10.     Plaintiff Melinda Ferguson ("Ferguson") is a resident of Rialto, California.

11.     Plaintiff Marie West ("West") is a resident of Antioch, California.

12.     Defendant is a Delaware corporation with its principal place of business at 101 North Brand Boulevard, 8th Floor, Glendale, California 91203.

13.     At all times material to this Complaint, acting alone or in concert with others, Defendant has advertised, marketed, distributed, or sold online educational programs to consumers throughout the United States.

## IV.    FACTUAL ALLEGATIONS

14.     From as early as 2012 to at least September of 2020, Defendant provided misleading advertising for its subscription-based service, placing consumers who believed they had only subscribed to a free trial or a one-year membership, into costly auto-renew memberships which do not cancel unless the consumer was able to successfully navigate through its purposefully confusing cancellation path that repeatedly discourages consumers from canceling. Defendant received at least tens of thousands of consumer complaints about these practices yet failed to rectify the problem and instead gained profit off the misleading advertising.

15.     Defendant's business practice aims to extract as much money as possible, for as long as possible, from paying subscribers.

16.     Defendant's webpage includes an animated image of a teacher gesturing to her classroom and displays a bright green gift tag with a prominent link offering consumers a special offer, which varied over the years (ex. "Special Offer 38% off").

17.     Consumers who clicked on the "Special Offer" link were directed to an enrollment page where a box was pre-checked for a 12-month membership.

18.     Consumers who used this page to sign up for a twelve-month ABCmouse membership were instead enrolled in an auto-renewal program where Defendant charged them a yearly membership fee ranging from $59.95 to $79.95 immediately and each year thereafter until they affirmatively canceled.  Defendant did not disclose the auto-renewal on the sign-up page.  Defendant also failed to disclose how to cancel the auto-renewal that consumers were not even aware Defendant had deceivingly enrolled them in.

19.     Similarly, when consumers enrolled in a 30-day free trial of an ABCmouse monthly membership, Defendant often enrolled the customers into an annual auto-renewal membership without the consumers' knowledge or consent.

20.     Other times when consumers enrolled in a 30-day free trial, Defendant often offered them alternative payment options following their free month, including twelve months or six months for a lower amount than initially advertised.  Defendant, however, did not disclose that after charging consumers who selected these options immediately for the stated membership term, Defendant would charge consumers again at the end of that period for the full six or twelve months, and on a recurring basis thereafter until they canceled.

21.     Defendant describes the ongoing nature of these term memberships only in separately hyperlinked terms and conditions.  Yet, even if consumers were to click on the hyperlinked terms and conditions, they would be unlikely to see that Defendant's term memberships automatically renew each year.  Defendant buried this information in dense text, in small font and in single-spaced type.  A far cry from the clear and conspicuous disclosures as required by law.

22.     In or around early 2018, Defendant received a Civil Investigative Demand from the Federal Trade Commission ("FTC").  *See* https://www.ftc.gov/system/files/documents/cases/1723086abcmousecomplaint.pdf (last visited February 23, 2021).  At that time, Defendant modified its term membership enrollment pages to include information about the membership's automatic renewal, but Defendant buried the information in the smallest font on the page under a bright red heading labeled "Easy Cancellation."  *Id*.  This disclosure was not close to or in similar size, brightness, or prominence to Defendant's representation that consumers were paying "$59.95 for 12 Months" of membership.  *Id*.  Thus, despite this modification, consumers were unlikely to see any disclosure of the automatic renewal of their twelve-month memberships.

23.     Making matters worse, Defendant knowingly enters consumers into auto-renew memberships aware that the consumers do not know the subscription renews itself.

24.     In fact, according to the filed FTC Complaint against Defendant in September of 2020, after which a settlement was reached, Defendant conducted an internal review in January of 2015 and determined that common customer support issues include that the "Subscription page is misleading," and "Customers are confused about their billing plan on registration, customer do not like they [are] not notified of their auto-renewal." *See* https://www.ftc.gov/system/files/documents/cases/1723086abcmousecomplaint.pdf (last visited February 23, 2021). Additionally, the January 2015 internal review found that the "Cancellation Path is too long," that the "Cancellation process is confusing," and that an ABCmouse membership was "not easy to cancel like advertised." *Id*. That same year, Defendant's Senior Director of Operations wrote:

> To improve customer experience / satisfaction, . . . I'd take a look at the impact of reducing the number of clicks in the online cancellation flow. I believe there are 8-9 clicks required currently, in order for a customer to successfully end their subscription.

*Id*.

25.     The FTC Complaint also found that the Defendant failed to make it easier to cancel after the 2015 internal review but instead made it more difficult. Specifically, in April 2016, Defendant added two screens to the cancellation mechanism, which, Defendant found, resulted in a "lower cancellation percentage." In May 2017, after Defendant's Senior Design Director reported that, according to the customer support department, "the cancellation path is too hard to get to and get through," Defendant changed its Parent Dashboard, including to make the "Cancellation Policy" link less prominent.  Defendant later concluded that because of this change, cancellations "decreased by approximately 10%-15%."  In June 2017,

shortly after this change was made, the same Senior Design Director reported that "the decrease of cancellation % of those entering the Parents Section to completion of the cancellation path." *Id*.

26.   It was only after the FTC issued a Civil Investigative Demand to Age of Learning that Defendant modified its online cancellation mechanism.  However, despite its modifications, Defendant's cancellation mechanism continued to be located within a link to Defendant's "Cancellation Policy;" continued to contain multiple screens that consumers had to navigate in order to cancel; continued to provide consumers with multiple links that if clicked, would take them out of the cancellation path without warning; and required as many as seven clicks to complete. Thus, consumers continued to complain that Defendant did not honor their cancellation requests.

27.   Consumers have been injured by Defendant's practice of renewing consumers' subscriptions without their consent and knowledge and making it difficult for consumers to cancel their subscriptions.

28.   The website Better Business Bureau provides some examples that chronicle their common grievances.  Customer Reviews give Defendant 1.04 out of 5 stars with numerous billing complaints such as the following:

- 9/30/2020 - I have submitted requests to cancel Age of Learning, there is no app nor is there a link to apple. Age of Learning refuses to acknowledge the request. I have contacted Age of Learning multiple times to cancel the subscription. They reply that it is through apple and it is not. I have been charged ***** for numerous months and have not had access to the account. Their subscription practices are fraudulent at best.

- 9/11/2020 - Requested cx of account 02/20. Confirmed cancellation. Still billed as of 08/20. I requested cancellation of account in February 2020. I received an email stating that I would no longer be billed. I have

been billed every month since, as of August 2020. I contacted the company again in March, and again in April with the same result. I'm told there is no active account with that email, yet I keep being charged. I have attempted to cancel the account through the website and get a notice that the subscription is not active, yet I see a ***** charge every month. Company says they have no record of an account with my email address, yet keep taking the money.

- 6/24/2020 - Age of Learning, Inc. has continued to charge me $9.95 monthly for the last 3-4 years, even after I asked for the account to be canceled in writing. I signed up my daughter for ABCmouse (Age of Learning, Inc.), an online learning program when she was 5 years old. My daughter is now 10 years old and has not used the program for the last 3-4 years. Back in 2018 I emailed the company to cancel my account. I could not cancel through the App because I didn't find the cancel option. The company emailed me and informed me I would have to cancel through the App itself. I again explained to them that I did not know how to do that and I again requested that my subscription be canceled. I called a number I found in the email and never was able to get a live operator. I left a message and months later I got a call back, they left a message and I called them back and again did not get a live operator. I continued to call and email numerous times requesting my subscription be canceled. This was in 2018 and 2019 now we are in 2020 and this company is still charging my bank $9.95 monthly for a service that no one has used in years and I requested in writing be canceled. They can log into my subscription and see that no one has logged in or used the service in the last 3-4 years. I give permission for BBB to receive a print out of the usage from this program, which will show that no one has logged in in years. I feel like this company is

CLASS ACTION COMPLAINT

stealing from me, because they refuse to cancel. I now have a four year old son and would love to have him use the program to prepare for Kindergarten, but I will not work with a company with these horrible practices. I also, feel like they purposefully make it difficult for customers to cancel their subscriptions. They must be doing this to other parents who were just trying to prepare their children for school.

- 4/30/3030 - I only had a trial version of ABCMouse, and I discovered I didn't want to continue the trial. I went to cancel, and I was tricked into a subscription. On April 19, I signed up for a trial version of ABCMouse as part of a promotional offer. I never used it once, nor did I download the app to check it out. On April 28, I went onto the mobile site to cancel my subscription, which was scheduled to to change me on May 19. However, when I went to unsubscribe on the android app, the buttons refused to work, pages kept popping up incidentally, and it all seemed very ungainly. When I made it to the cancellation page, ABCMouse tried twice to make me subscribe, putting the keep subscription button above the cancellation one. Then, when I clicked "yes I want to cancel subscription" they page went onto another screen which I assumed was where I would enter my password and unsubscribe. The keyboard automatically pops up to have me enter my password for confirmation, conveniently covering up the fact that THE EMAIL ENTRY IS FOR A SUBSCRIPTION! Not only did they ask me to confirm my subscription (which they would asked for when in cancellation) but they overdrew my bank account linked to my paypal, which they were not authorized to do! I want a refund, and they ought to offer a better way of contacting them about this that through the BBB!

- 4/21/2020 - I have been trying, since the day I purchased, to get human correspondence from ABCMouse.com to receive a refund for what I was unexpectedly charged. ABCMouse.com advertised a one month free trial. On 4/7/20, I signed up. They required me to input credit card information, which seems like it'd be used to charge me AFTER the 30 day trial; should I choose to continue using the program. What was not made clear at all, was that I'd be charged $59.40 for the full year of subscription, immediately. The advertising was very misleading. Its should more accurately state that if you sign up for a year, you'll receive an additional month free. There is no number to call listed on the website so I contacted the only email address available, stating that I'd like a refund. I did this the same day I signed up for the trial, 4/7/20. Furthermore, my child did not like the program at all, unfortunately. So, there's even more of a reason to seek a refund. I received a generic email from ******* that listed information on how to cancel my subscription/membership. NOTHING addressed my desire for a refund or how to seek further info on how to do this. I emailed for a second time and again received the exact SAME generic email about cancellation, this time from *******. It has now been a week and I have reached out 4 times. This is absolutely ridiculous. I feel taken advantage of. I simply want a refund. My request is not complicated. Upon visiting the BBB, I see several complaints that are similar.

- 4/14/2020 - I was billed for a yearly subscription of ABC mouse automatically the same day when I chose a 30 day "free trial" I registered for a "30 day free trial" of ABCmouse for my child. The terms and conditions stated that my subscription would be renewed monthly if I did NOT cancel. It did NOT say that I would be charged an annual fee the same day! The SAME DAY I registered for the 30

CLASS ACTION COMPLAINT

day "free" trial, i was charged an annual subscription fee of ******
USD. I emailed customer service and received no response to my claim.
I since have gone online and read many poor reviews of similar people
in this "scam-like" situation. I feel like it is a total scam taking
advantage of parents who are trying to educate their children during this
pandemic. On top of that, I couldn't even get the app to work as it was
so overloaded (likely with the "free trial" being promoted).

- 3/31/2020 - In spring of 2019 I signed up for one year subscription for
  my grandkids. They auto-renewed without my knowledge and hit my
  PayPal for ******* In spring of 2019 I signed up for one year
  subscription for my two grandkids to use. They barely used and the last
  was April 2019. This past Wednesday I noticed that they hit my PayPal
  account for ****** for another year without my knowledge beforehand.
  I didn't get an e-mail saying "unless you cancel by ... your account will
  be charged" like all REPUTABLE companies. I've called and of course
  no one there. I sent an e-mail they their system on Wed and got no
  response. I cancelled at that point. I contacted PayPal and got no help
  there either. This is FRAUD!

- 3/25/2020 - I HAD NO IDEA they were going to charge me annually.
  I thought you paid for what you wanted and what I wanted was one year.
  Not till I die!!! I just happen to be looking through my account due to
  the virus and I noticed the charge from October 6th. I was SHOCKED!
  I never authorized this charge. I NEVER gave them permission to
  charge me besides the initial payment. To prove that, you can see that
  we didn't even use the subsection because I assumed it ended! I am not
  paying for something I didn't authorize and I will fraud the charge as
  soon as this virus nightmare is over. I will also not stop until I make
  sure as many people as I know that this company is a thief!!!!!

CLASS ACTION COMPLAINT

- 6/7/2019 - I did not realize this was an automatic renewal subscription. I received a charge of $59.99 to my PayPal account on 6/5 and I want it back. I did not realize this service automatically renews itself. I received a charge to my PayPal account on 6/5 in the amount of $59.99. My children no longer use ABC mouse and I have no use for a yearly membership at this time. Once I received the charge, I immediately contacted customer service to cancelation/refund to which I received a generic e-mail with directions on how to cancel with no mention of a refund. I did so, but it says my membership will not be canceled until 6/5/2020. I want it canceled now with a full refund since I will not be using it at all in the next year. I constantly received e-mails from ABC mouse about promotions if you renewed now. If the service renews automatically, then why would I have received e-mails requesting I renew? That is very misleading. Please refund my money and cancel the service.

- 2/25/2019 - I signed up for a free trail for ABCMOUSE.com back in 2018. Even though I cancelled the account exactly as they stated and have not used the account I continue to be charged $9.95 a month since then. I have cancelled my card and had new cards issued. I just today learned from my bank that they can just push the payments through in order to get their money. I can not even log into the account to cancel the account or to make sure that the account is closed for good with out having to input my credit card information. I have sent numerous email and called several times to no avail. This company continues to take money out of my account without my permission and it needs to stop. The company has taken $99.50 since June of 2018 and also charged me twice in the month of June when I was not even suppose to be charged once. the email I used for the account is ************@yahoo.com

CLASS ACTION COMPLAINT

> Like I stated the card I used to open the account has since been terminated. Any help would be greatly appreciated.

*See* https://www.bbb.org/us/ca/glendale/profile/online-education/age-of-learning-inc-1216-100117983 (last visited February 23, 2021).

29.   FTC Commissioner Rohit Chopra made the following statement regarding Defendant's practices following the FTC settlement:

> At a time when many parents are looking for more opportunities for educational enrichment online, it is disappointing that services like ABCmouse have scammed millions of dollars from families through dark patterns, as alleged in the Commission's complaint. By making it extremely difficult to cancel recurring subscription fees, ABCmouse engaged in conduct that was not only unethical, but also illegal.

*See*

https://www.ftc.gov/system/files/documents/public_statements/1579927/172_3086_abcmouse_-_rchopra_statement.pdf (last visited February 23, 2021).

30.   California's Automatic Renewal Law, Cal. Bus. Prof. Code, §§ 17600-17606, was enacted in December 2010. The stated intent of the Legislature was "to end the practice of ongoing charging of consumer credit or debit cards or third-party payment accounts without the consumers' explicit consent for ongoing shipments of a product or ongoing deliveries of service." *See* Cal. Bus. Prof. Code § 17600.

31.   Cal. Bus. Prof. Code § 17601(a) defines the term "automatic renewal" to mean "a plan or arrangement in which a paid subscription or purchasing agreement is automatically renewed at the end of a definite term for a subsequent term." Defendant, through its website and the app, offered and continues to offer consumers in California, (including Plaintiffs and class members) education services using a plan or arrangement in which a paid subscription is automatically renewed at the end of a definite term. Defendant's subscriptions were, and are, "automatic renewal" plans under Cal. Bus. Prof. Code § 17601(a).

32.     Cal. Bus. Prof. Code § 17602(a)(1) makes it unlawful for any business that makes an automatic renewal or continuous service offer to a consumer in California to:

> Fail to present the automatic renewal offer terms or continuous service offer terms in a clear and conspicuous manner before the subscription or purchasing agreement is fulfilled and in visual proximity, or in the case of an offer conveyed by voice, in temporal proximity, to the request for consent to the offer…

33.     Cal. Bus. Prof. Code § 17601(b) defines the term "automatic renewal offer terms" as the following clear and conspicuous disclosures:

> (1) That the subscription or purchasing agreement will continue until the consumer cancels.

> (2) The description of the cancellation policy that applies to the offer.

> (3) The recurring charges that will be charged to the consumer's credit or debit card or payment account with a third party as part of the automatic renewal plan or arrangement, and that the amount of the charge may change, if that is the case, and the amount to which the charge will change, if known.

> (4) The length of the automatic renewal term or that the service is continuous, unless the length of the term is chosen by the consumer.

> (5) The minimum purchase obligation, if any.

34.     At all relevant times, Defendant failed to disclose the "automatic renewal offer terms" required by Cal. Bus. Prof. Code § 17601(b) before California consumers purchased their subscriptions. At no time during Defendant's subscription flow, or the process by which California consumers are presented with and then accept an offer for an automatically renewing premium subscription, did Defendant clearly and conspicuously disclose (i) that the subscription will continue until cancelled (ii) the cancellation policy that applied to the offer; (iii) the recurring charges that would be charged to the consumer's credit or debit cards or third party

payment accounts; (iv) the length of the automatic renewal term or that the service was continuous. This conduct violates Cal. Bus. Prof. Code § 17602 (a)(1).

35.    Cal. Bus. Prof. Code § 17602(a)(2) makes it unlawful for any business that makes an automatic renewal or continuous service offer to a consumer in California to:

> Charge the consumer's credit or debit card, or the consumer's account with a third party, for an automatic renewal or continuous service without first obtaining the consumer's affirmative consent to the agreement containing the automatic renewal offer terms or continuous service offer terms….

36.    At all relevant times, Defendant charged, and continues to charge, Plaintiffs and class members for subscriptions. Prior to September of 2020, Defendant did so without first obtaining California consumers' affirmative consent to the agreement containing the automatic renewal offer terms or continuous service offer terms. Indeed, there was no mechanism (during the subscription process or at any point in time) that required California consumers to affirmatively consent to such terms. This conduct violates Cal. Bus. Prof. Code § 17602(a)(2).

37.    Cal. Bus. Prof. Code § 17602(a)(3) makes it unlawful for any business that makes an automatic renewal or continuous service offer to a consumer in California to:

> Fail to provide an acknowledgement that includes the automatic renewal or continuous service offer terms, cancellation policy, and information regarding how to cancel in a manner that is capable of being retained by the consumer...

38.    Cal. Bus. Prof. Code § 17602(b) further provides:

A business that makes automatic renewal offer or continuous service offer shall provide a toll-free telephone number, electronic mail address, a postal address if the seller directly bills the consumer, or it shall provide another cost-effective, timely, and easy-to-use mechanism for cancellation that shall be described in the acknowledgment specified in paragraph (3) of subdivision

(a).

39. Defendant fails to provide California consumers with an acknowledgement that satisfies any of the requirements of Cal. Bus. Prof. Code §§ 17602(a)(3) and 17602(b).

40. Cal. Bus. Prof. Code § 17603 provides:

> In any case in which a business sends any goods, wares, merchandise, or products to a consumer, under a continuous service agreement or automatic renewal of a purchase, without first obtaining the consumer's affirmative consent as described in Section 17602, the goods, wares, merchandise, or products shall for all purposes be deemed an unconditional gift to the consumer, who may use or dispose of the same in any manner he or she sees fit without any obligation whatsoever on the consumer's part to the business, including, but not limited to, bearing the cost of, or responsibility for, shipping any goods, wares, merchandise, or products to the
> business.

41. Defendant's subscriptions for the educational service for kids is a product provided to Plaintiffs and class members. As a result, the services provided to Plaintiffs and class members under the subscription plans shall for all purposes be deemed an "unconditional gift" to them, and Plaintiffs and class members who may use such services in any manner they see fit without obligation to Defendant. Cal. Bus. & Prof. Code § 17603.

42. As a result of Defendant's violation of the Automatic Renewal Law, Plaintiff Ferguson and West and class members defined below suffered economic injury and are entitled to reimbursement of their payments.

## V. PLAINTIFF FERGUSON'S INDIVIDUAL ALLEGATIONS

43. On or around October of 2019, Plaintiff Ferguson purchased a 12-month subscription to Defendant's educational app for her granddaughter who was 3 years old at the time believing it was a one-time subscription.

44.     Plaintiff Ferguson provided her credit card information directly to Defendant.

45.     Plaintiff Ferguson was charged $39.95 plus $59.95 on October 1, 2016 by Defendant.

46.     The next year, Plaintiff Ferguson was charged $39.95 again as well as $59.95 by Defendant.

47.     At the time she subscribed, Plaintiff Ferguson believed the subscription would not extend beyond one year and she did not expect to be charged again.

48.     Before she subscribed to Defendant's service, Defendant did not disclose the automatic renewal offer terms or continuous service offer terms to Plaintiff Ferguson, which was a direct violation of Cal. Bus. & Prof. Code § 17602(a)(1).  The screens and buttons presented to Plaintiff Ferguson before her purchase did not state that the 12-month subscription would continue year to year until she cancelled, did not describe the cancelation policy that applied to her purchase, did not state the recurring charges that would be charged to her credit card, and did not state that the term was continuous.

49.     At no point did Defendant obtain Plaintiff Ferguson's affirmative consent to an agreement containing the automatic renewal offer terms or continuous service offer terms, which was a violation of Cal. Bus. & Prof. Code § 17602(a)(2).

50.     At no point did Defendant email Plaintiff Ferguson an acknowledgement that her ABCmouse subscription had been activated or the terms of membership.

51.     At no point did Defendant advise Plaintiff Ferguson via email or otherwise with the automatic renewal or continuous service offer terms, cancellation policy, nor did it provide information regarding how to cancel, which was a violation of Cal. Bus. & Prof. Code § 17602(a)(3).  Defendant further failed to provide a toll-free telephone number, electronic mail address, or postal address, or another cost-effective, timely, and easy-to-use mechanism for cancellation of her membership,

which is a violation of Cal. Bus. & Prof. Code § 17602(b).  Plaintiff Ferguson did not receive any other acknowledgements that contain the required information.

52.    Upon the expiration of the 12-month subscription, Plaintiff Ferguson's granddaughter to whom the subscription was purchased no longer used, nor did she want, Defendant's service.  However, Defendant automatically renewed her 12-month subscription and charged Plaintiff Ferguson's credit card without per consent or permission.

## V.    PLAINTIFF WEST'S INDIVIDUAL ALLEGATIONS

53.    On or around October of 2012, Plaintiff West purchased a 12-month subscription to Defendant's educational app for her child believing it was a one-time subscription.

54.    Plaintiff West provided her credit card information directly to Defendant.

55.    Plaintiff West was charged $59.95 by Defendant.

56.    The next year, Plaintiff West was charged $59.95 again by Defendant and was charged ever year there thereafter until the present.

57.    At the time she subscribed, Plaintiff West believed the subscription would not extend beyond one year and she did not expect to be charged again.

58.    Before she subscribed to Defendant's service, Defendant did not disclose the automatic renewal offer terms or continuous service offer terms to Plaintiff West, which was a direct violation of Cal. Bus. & Prof. Code § 17602(a)(1). The screens and buttons presented to Plaintiff West before her purchase did not state that the 12-month subscription would continue year to year until she cancelled, did not describe the cancelation policy that applied to her purchase, did not state the recurring charges that would be charged to her credit card, and did not state that the term was continuous.

59.    At no point did Defendant obtain Plaintiff West's affirmative consent to an agreement containing the automatic renewal offer terms or continuous service

offer terms, which was a violation of Cal. Bus. & Prof. Code § 17602(a)(2).

60.     At no point did Defendant email Plaintiff West an acknowledgement that her ABCmouse subscription had been activated or the terms of membership.

61.     At no point did Defendant advise Plaintiff West via email or otherwise with the automatic renewal or continuous service offer terms, cancellation policy, nor did it provide information regarding how to cancel, which was a violation of Cal. Bus. & Prof. Code § 17602(a)(3).  Defendant further failed to provide a toll-free telephone number, electronic mail address, or postal address, or another cost-effective, timely, and easy-to-use mechanism for cancellation of her membership, which is a violation of Cal. Bus. & Prof. Code § 17602(b).  Plaintiff West did not receive any other acknowledgements that contained the required information.

62.     Although Plaintiff West requested a refund on various occasions as the membership was not used or desired, Defendant denied the refund and failed to cancel Plaintiff West's subscription.

## VI.    DELAYED DISCOVERY

63.     Plaintiffs and the class are reasonably diligent consumers who exercised reasonable diligence in their purchase of Defendant's subscription-based service.  Nevertheless, they would not have been able to discover Defendant's deceptive practices given Defendant actively conceals its auto renewal practices from consumers.  Defendant's practices and non-conspicuous disclosures impended Plaintiffs and the class members' abilities to discovery the deceptive and unlawful auto renewal polices throughout the class period.  Defendant's use of automatic renewals and charges to consumers credit card, debit cards, and/or third-party payment accounts on an annual basis, allowed Defendant to hide its unlawful practices as consumers do not always perform line-item reviews of their credit and banking statements.  Because Defendant actively concealed its illegal conduct, preventing Plaintiffs and the class from discovery its violations of state law, Plaintiffs and the class are entitled to delayed discovery and an extended class period

tolling of the applicable statute of limitations. Plaintiffs were unaware of the charge until finding the auto renew on their bank statements no earlier than at least year after the original purchase, when the subscription renewed.

## VII.   CLASS ALLEGATIONS

64.   Plaintiffs bring this class action lawsuit individually and on behalf of the proposed class under Rule 23 of the Federal Rules of Civil Procedure.

> All persons within California who purchased one of Defendant's subscription memberships and had their credit card, debit card, and/or a third-party payment account charged as part as Defendant's automatic renewal program or a continuous service program.

65.   Excluded from the class are the following individuals: officers and directors of Defendant and its parents, subsidiaries, affiliates, and any entity in which Defendant has a controlling interest; and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

66.   Plaintiffs reserve the right to modify or amend the definitions of the proposed class before the Court determines whether certification is appropriate.

67.   <u>Numerosity</u>. The members of the class are so numerous that a joinder of all members is impracticable.  While the exact number of class members is unknown to Plaintiffs at this time, Plaintiffs believe the class numbers in the tens of thousands, if not more.

68.   <u>Typicality</u>. Plaintiffs' claims are typical of the claims of the class members because, among other things, Plaintiffs sustained similar injuries to that of class members as a result of Defendant's uniform wrongful conduct, and their legal claims all arise from the same events and wrongful conduct by Defendant.

69.   <u>Adequacy</u>.  Plaintiffs will fairly and adequately protect the interests of the class members. Plaintiffs' interests do not conflict with the interests of the class

CLASS ACTION COMPLAINT

members and Plaintiffs have retained counsel experienced in complex class action cases to prosecute this case on behalf of the class.

70.    <u>Commonality</u>. Common questions of law and fact exist as to all class members and predominate over any questions solely affecting individual members of the class, including the following:

i.    Whether Defendant failed to present the automatic renewal offer terms, or continuous service offer terms, in a clear and conspicuous manner before the subscription was purchased and in visual proximity to the request for consent to the offer in violation of Cal. Bus. & Prof. Code § 17602(a)(1);

ii.    Whether Defendant enrolled Plaintiffs and class members in an automatic renewal or continuous service program without first obtaining their affirmative consent to the automatic renewal offer terms or continuous service offer terms in violation of Cal. Bus. & Prof. Code § 17602(a)(2);

iii.    Whether Defendant failed to provide an acknowledgment that included that automatic renewal or continuous service offer terms, cancellation policy, and information on how to cancel in a manner that is capable of being retained by Plaintiffs and class members, in violation of Cal. Bus. & Prof. Code § 17602(a)(3);

iv.    Whether Plaintiffs and the class members are entitled to restitution or disgorgement of money paid in accordance with the unconditional gift provision in Cal. Bus. & Prof. Code § 17603;

v.    Whether Defendant's auto-renewal conduct violates the CLRA;

vi.    Whether Plaintiffs and the class members are entitled to restitution pursuant to the UCL;

vii.    Whether, as a result of Defendant's conduct, Plaintiffs and the class members suffered injury; and

viii.   The nature of the relief, including equitable relief, to which Plaintiffs sand class Members are entitled.

71.   <u>Ascertainability</u>. Class members can easily be identified by an examination and analysis of the business records maintained by Defendant, among other records within Defendant's possession, custody, or control.

72.   <u>Predominance</u>. The common issues of law and fact identified above predominate over any other questions affecting only individual members of the class. The class issues fully predominate over any individual issue because no inquiry into individual conduct is necessary; all that is required is a narrow focus on Defendant's conduct.

73.   <u>Superiority</u>. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since a joinder of all members is impracticable.  Furthermore, as damages suffered by class members may be relatively small, the expense and burden of individual litigation make it impossible for class members to individually redress the wrongs done to them. Individualized litigation also presents a potential for inconsistent or contradictory judgments, and increases the delay and expense presented by the complex legal and factual issues of the case to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of a single adjudication, economy of scale, and comprehensive supervision by a single court.

74.   Accordingly, this class action is properly brought and should be maintained as a class action because questions of law or fact common to class members predominate over any questions affecting only individual members, and because a class action is superior to other available methods for fairly and efficiently adjudicating this controversy.

75.   This class action is also properly brought and should be maintained as a class action because Plaintiffs seek injunctive relief and declaratory relief on behalf of the class members on grounds generally applicable to the proposed class.

Certification is appropriate because Defendant has acted or refused to act in a manner that applies generally to the proposed class, making final declaratory or injunctive relief appropriate.

## FIRST CAUSE OF ACTION

### Violation of the California's Unfair Competition Law
### Cal. Bus. & Prof. Code §§ 17200, *et seq.*
### *(On Behalf of Plaintiffs and the Class)*

76.     Plaintiffs re-allege and incorporate by reference each and every allegation contained elsewhere in this Complaint as if fully set forth herein.

77.     Defendant is subject to California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq*. The UCL provides, in pertinent part: "Unfair competition shall mean and include unlawful, unfair or fraudulent business practices…"

### *"Unfair" Prong*

78.     The UCL prohibits "unfair competition," which is broadly defined as including "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by Chapter 1 (commencing with Section 17500) of Part 3 of Division 7 of the Business and Professions Code." Bus. & Prof. Code §17200.

79.     Defendant's business practices, described herein, violated the "unfair" prong of the UCL in that their conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous, as the gravity of the conduct outweighs any alleged benefits.

80.     Defendant has made material misrepresentations and omissions, both directly and indirectly, related to their billing practices.

81.     As such, Defendant has engaged in unfair or deceptive acts in violation of the UCL.

82. Defendant's unfair acts allege herein deceived and misled consumers. Defendant has taken advantage of the lack of knowledge, ability, experience, or capacity of consumers to the detriment of those consumers.

83. Defendant's conduct also injures competing educational service providers that do not engage in the same unfair and unethical behavior.

84. Defendant's violations were, and are, willful, deceptive, unfair, and unconscionable. Defendant is aware of the violations but have failed to adequately and affirmatively take steps to cure the misconduct.

*"Fraudulent" Prong*

85. Under the "fraudulent" prong, a business practice is prohibited if it is likely to mislead or deceive a reasonable consumer or, where the business practice is aimed at a particularly susceptible audience, a reasonable member of that target audience. *See Lavie v. Proctor & Gamble Co.,* 105 Cal.App.4th 496, 506-07 (2003).

86. Defendant's conduct with respect to the automatic renewal of Defendant's subscriptions as described herein violates the "fraudulent prong" of the UCL.  Such practices are likely to deceive members of the public

87. The UCL authorizes a civil enforcement action against "[a]ny person who engages, has engaged, or proposes to engage in unfair competition." Bus. & Prof. Code §17203.  "[P]erson" includes "natural persons, corporations, firms, partnerships, joint stock companies, associations and other organizations of persons." *Id.* §17201.

88. Defendant intentionally misleads and deceives consumers into believing they are entering into a 30-day trial or one year subscription then places the consumer into an auto renewal indefinitely.

89. Plaintiffs and class members acted reasonably when they subscribed to Defendant's service, which they believed to truthfully advertised.

90. Plaintiffs and class members lost money or property as a result of Defendant's UCL violations because they would not have subscribed to Defendant's

services absent Defendant's representations and omission of a warning of the automatic renewal and easy cancelation.

*"Unlawful" Prong*

91.    Defendant's business practices, described herein, violated the "unlawful" prong of the UCL by violating the Automatic Renewal Law, Cal. Bus. Prof. Code, §17602.

92.    Such conduct is ongoing and continues to date.

93.    Defendant's conduct further violates other applicable California regulations as alleged herein.

94.    Plaintiffs and class members are likely to continue to be damaged by Defendant's deceptive practices thus injunctive relief enjoining Defendant's deceptive practices is proper.

95.    There were reasonably available alternatives to further Defendant's legitimate business interests, other than the conduct described herein.

96.    Defendant's practices are therefore unfair, unlawful, and fraudulent under Section 17200 *et. seq.* of the California Civil Code.

## SECOND CAUSE OF ACTION

### Negligent Misrepresentation

### Cal. Civ. Code §§ 1709-1710

*(On Behalf of Plaintiffs and the Class)*

97.    Plaintiffs re-allege and incorporate by reference each and every allegation contained elsewhere in this Complaint as if fully set forth herein.

98.    Defendant's practice of failing to advise consumers that they would enter into automatic renewals, failure to provide the acknowledgement required by the Automatic Renewal Law, and failure to provide an easy way to cancel as advertised concern material facts that influenced Plaintiffs and the class members' subscription to the service.

99.    At the time Defendant made the misrepresentations, Defendant knew or should have known that the misrepresentations were false, or Defendant made the misrepresentations without knowledge of their truth or veracity.

100.   Plaintiffs and the class members reasonably, justifiably, and detrimentally relied on the misrepresentations and, as a proximate result thereof, have and will continue to suffer damages.

## THRID CAUSE OF ACTION

### Unjust Enrichment

### *(On Behalf of Plaintiffs and the Class)*

101.   Plaintiffs re-allege and incorporate by reference each and every allegation contained elsewhere in this Complaint as if fully set forth herein.

102.   By failing to advise consumers that they would enter into automatic renewals, failure to provide the acknowledgement required by the Automatic Renewal Law, and failure to provide an easy way to cancel as advertised, Defendant was unjustly enriched at the expense of Plaintiffs and class members. It would be inequitable, unjust, and unconscionable for Defendant to retain the profit it received by unauthorized subscription payments.

103.   Plaintiffs seek disgorgement of all proceeds, profits, benefits, and other compensation obtained by Defendant from their improper and unlawful subscription charges, as well as all other appropriate relief permitted by law of unjust enrichment, including reasonable attorneys' fees and costs of suit.

## FOURTH CAUSE OF ACTION

### Violation of the California's Consumers Legal Remedies Act

### Cal. Bus. & Prof. Code §§ 1750, *et seq.*

### *(On Behalf of Plaintiffs and the Class)*

104.   Plaintiffs re-allege and incorporate by reference each and every allegation contained elsewhere in this Complaint as if fully set forth herein.

105.   Cal. Civ. Code § 1770(a)(14) specifically prohibits companies from "[r]epresenting that a transaction confers or involves rights, remedies, or obligations that it does not have or involve, or that are prohibited by law."

106.   Defendant violated, and continues to violate the CLRA by representing that it has rights and remedies that it does not have, specifically that it has the right to charge Plaintiffs and class members' debit cards, credit cards, or third party payment methods without first making the statutorily required disclosures under the Automatic Renewal Law and obtaining their affirmative consent to the agreement containing the automatic renewal terms and continuous offer terms, and through other conduct described above, in violation of the Automatic Renewal Law. Defendant does not have the legal right to charge for these subscriptions because at all relevant times, it was not in compliance with the Automatic Renewal Law.

107.   Plaintiffs Ferguson and West and members class reasonably relied upon Defendant's material misrepresentations and/or omissions to their detriment.  Had Defendant complied with its disclosure obligations under the Automatic Renewal Law, Plaintiffs Ferguson and West and members of the class would not have subscribed to Defendant's service or would have cancelled their subscriptions prior to the renewal of the subscriptions, so as not to incur additional fees.  As a result of Defendant's conduct, Plaintiffs and members of the class were damaged.

108.   On February 26, 2021, prior to filing this action, Plaintiffs Ferguson and West sent a CLRA notice letter to Defendant which complies with California Civil Code § 1782(a).  Plaintiffs sent Defendant, individually and on behalf of the proposed class, a letter via Certified Mail, advising Defendant that it is in violation of the CLRA and demanding that it cease and desist from such violations, take appropriate corrective action, and make full restitution by refunding monies received therefrom.

109.   Plaintiffs Ferguson and West, on behalf of themselves and class, is therefore entitled to maintain an action for damages under Civil Code §§ 1780 and

1781 and requests injunctive relief and other relief that the Court deems proper, and reasonable attorneys' fees and costs, as permitted by Civil Code §§ 1780 and 1782. Such injunctive relief includes requiring Defendant to (i) cease representing to consumers that Defendant is entitled to automatically renew their subscriptions; (ii) cease representing to consumers that they are not entitled to refunds of moneys paid to Defendant for the subscription; (iii) cease denying consumers requests for refunds that are allowable under the law; and (iv) fully comply with the automatic subscription law.

110.   Wherefore, Plaintiffs seek injunctive relief for Defendant's violations of the CLRA. If Defendant fails to take the corrective action detailed in Plaintiffs' CLRA letter within thirty days of the date of the letter, then Plaintiffs will seek leave to amend their complaint to add a claim for damages under the CLRA.

**FIFTH CAUSE OF ACTION**

**False Advertising**

**Cal. Bus. & Prof. Code §§ 17600 *et seq.* and 17535**

***(On Behalf of Plaintiffs and the Class)***

111.   Plaintiffs re-allege and incorporates by reference each and every allegation contained elsewhere in this Complaint as if fully set forth herein.

112.   Defendant has enrolled consumers, including Plaintiffs and class members, in automatic renewal programs and/or continuous service programs and have (a) failed to present the automatic renewal or continuous service offer in a clear and conspicuous manned before the subscription or purchasing agreement is fulfilled and in visual proximity, or in the case of an offer conveyed by voice, in temporal proximity, to the request for consent to the offer, in violation of § 17602(a)(1); (b) charging the consumer's credit or debit card or the consumer's third-party payment account for an automatic renewal or continuous service without first obtaining the consumer's affirmative consent to an agreement containing clear and conspicuous disclosures of the automatic renewal offer terms or continue service offer terms, in

violation of § 17602(a)(2); and (c) failed to provide an acknowledgment that includes the required clear and conspicuous disclosure of automatic renewal or continuous service offer terms, cancellation policy, information regarding how to cancel, and a toll-free telephone number, electronic mail address, postal address or other mechanism for cancellation, in violation of § 17602(a)(3) and § 17602(b).

113.   Plaintiffs and class members have suffered injury in fact and lost money or property as a result of Defendant's violation of Automatic Renewal Law.

114.   Pursuant to § 17603, all goods received by Plaintiffs and class members are deemed to be an unconditional gift.

115.   Pursuant to § 17535, Plaintiffs and class members are entitled to restitution of all amounts that Defendant charged to Plaintiffs' and class members' credit cards, debit card, or thirty-party payment accounts.

116.   Unless enjoined and restrained by this Court, Defendant will continue the unlawful conduct alleged herein. Pursuant to § 17535, Plaintiffs seek a public injunction for the benefit of the general public of the State of California.

## SIXTH CAUSE OF ACTION

### Theft

### Cal. Penal Code § 496

### *(On Behalf of Plaintiffs and the Class)*

117.   Plaintiffs re-allege and incorporates by reference each and every allegation contained elsewhere in this Complaint as if fully set forth herein.

118.   Penal Code § 496 states in pertinent part:

"(a) Every person who . . . receives any property ... that has been obtained in any manner constituting theft . . . knowing the property to be so . . . obtained, or who withholds, or aids in, withholding any property from the owner, knowing the property to be so ... obtained, shall be punished [description of criminal punishments].

…

(c) Any person who has been injured by a violation of subdivision ... may bring an action for three times the amount of actual damages ... costs of suit, and reasonable attorney's fees."

119.   Theft, as described in Cal. Penal Code § 484, subdivision (a) includes the following:

"Every person … who shall knowingly and designedly, by any false of fraudulent representation or pretense, defraud any other person of money . . . is guilty of theft."

120.   Plaintiffs allege that their property and the property of members of the class was obtained by Defendant in a manner constituting theft or was withheld from Plaintiffs and the class by Defendant with the knowledge that the property had been obtained in a manner constituting theft.

121.   Defendant created, implemented and/or participating in a systematic and uniform scheme to obtain money by unlawful means through a series of unlawful acts based upon false representations or pretenses as follows:

(a) Defendant unlawfully enrolled consumers in their automatic renewal program without requesting their consent or obtaining their affirmative consent in violation of § 17602 of the Automatic Renewal Law;

(b) In furtherance of its violation of § 17602 of the Automatic Renewal Law, Defendant created and implemented the false pretense to consumers that consumers were obligated to pay for each month prior to cancellation contrary to § 17603 of the Automatic Renewal Law which provides that all merchandise sold pursuant to an unlawful automatic renewal "shall for all purposes be deemed an unconditional gift to the consumer.";

(c) In furtherance of its violation of § 17602 of the Automatic Renewal Law and in furtherance of and as part of their scheme to unlawfully enroll consumers in their automatic renewal program and to obtain money from consumers, Defendant debited or charged consumer accounts on the false

pretense that consumers were validly enrolled in the Defendant's automatic renewal program and the consumer's enrollment in the automatic renewal program legally allowed Defendant to debit or charge their accounts;

(d) In furtherance of its violation of § 17602 and 17603 of the Automatic Renewal Law, Defendant refused to return money to consumers for its subscription service paid or available to the consumer prior to cancellation based on the false pretense that consumers were legally obligated to pay for Defendant's subscription service prior to the cancellation.

(e) Defendant's collection of money from consumers for its subscription service prior to the consumer's request for cancellation was a systematic practice applied uniformly to all consumers and was based upon the Defendant's uniform and false pretense to all consumers that Defendant was entitled to keep the money debited for its service prior to cancellation, even though Defendant knew that upon cancellation, all consumers were entitled to a complete refund of all monies pursuant to ARL.

122.   As a result of Defendant's unlawful conduct, Plaintiffs and the class members were charged a monthly or annual fee and were damaged by their loss of money obtained or withheld by Defendant in furtherance of a scheme and artifice to obtain and withhold money based upon false representations and pretenses.

## SEVENTHS CAUSE OF ACTION

### Conversion

### *(On Behalf of Plaintiffs and the Class)*

123.   Plaintiffs re-allege and incorporate by reference each and every allegation contained elsewhere in this Complaint as if fully set forth herein.

124.   Defendant has enrolled consumers, including Plaintiffs and class members, in automatic renewal programs and/or continuous service programs and have (a) failed to present the automatic renewal or continuous service offer in a clear

and conspicuous manned before the subscription or purchasing agreement is fulfilled and in visual proximity, or in the case of an offer conveyed by voice, in temporal proximity, to the request for consent to the offer, in violation of § 17602(a)(1); (b) charging the consumer's credit or debit card or the consumer's third-party payment account for an automatic renewal or continuous service without first obtaining the consumer's affirmative consent to an agreement containing clear and conspicuous disclosures of the automatic renewal offer terms or continue service offer terms, in violation of § 17602(a)(2); and (c) failed to provide an acknowledgment that includes the required clear and conspicuous disclosure of automatic renewal or continuous service offer terms, cancellation policy, information regarding how to cancel, and a toll-free telephone number, electronic mail address, postal address or other mechanism for cancellation, in violation of § 17602(a)(3) and § 17602(b).

125.   Plaintiffs and class members have suffered injury in fact and lost money or property as a result of Defendant's violation of Automatic Renewal Law.

126.   Pursuant to § 17603, all goods received by Plaintiffs and class members are deemed to be an unconditional gift.

127.   Pursuant to § 17535, Defendant's collection and retention of money resulted in the wrongful exercise of dominion over property belonging to Plaintiffs and the class and Plaintiffs and class members are entitled to restitution of all amounts that Defendant charged to Plaintiffs and class members' credit cards, debit card, or thirty-party payment accounts.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of all class members proposed in this Complaint, respectfully request that the Court enter a judgment in their favor and against Defendant, as follows:

A. Determining that this action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure and appointing them and their Counsel to represent the class;

B. Requiring Defendant beat the cost of Class notice;

C. Finding Defendant's conduct was unlawful as alleged herein;

C. Enjoining Defendant from engaging in the wrongful conduct complained of herein, and as to violations of the CLRA.  As to Plaintiffs' CLRA claim, if Defendant fails to take the corrective action detailed in Plaintiffs' CLRA letter within thirty days of the date of the letter, then Plaintiffs will seek leave to amend their complaint to add a claim for damages under the CLRA;

D. Requiring restitution and disgorgement of the revenues wrongfully retained as a result of Defendant's wrongful conduct;

E. Awarding Plaintiffs and class members actual damages, compensatory damages, punitive damages, statutory damages, and statutory penalties, in an amount to be determined;

F. Awarding Plaintiffs and class members costs of suit and attorneys' fees, as allowable by law; and,

G. Granting such other and further relief as this court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury of all issues so triable.

DATED: February 26, 2021          Respectfully submitted,

*/s/ Ronald A. Marron*
Ronald A. Marron
**LAW OFFICES OF RONALD A. MARRON**
RONALD A. MARRON
*ron@consumersadvocates.com*
ALEXIS M. WOOD
*alexis@consumersadvocates.com*
KAS L. GALLUCCI
*kas@consumersadvocates.com*
651 Arroyo Drive
San Diego, California 92103

CLASS ACTION COMPLAINT

Telephone: (619) 696-9006
Facsimile: (619) 564-6665

***Attorney for Plaintiffs and the Proposed Class***